**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **MARIA ELIZABETH SOTO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. _____** |
| **VS.** | § | |
| | § | |
| **OCWEN LOAN SERVICING, LLC,** | § | |
| | § | |
| **Defendant.** | § | **With Jury Demand Endorsed** |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Maria Elizabeth Soto ("Plaintiff"), by counsel, and for her Complaint against the defendant, Ocwen Loan Servicing, LLC ("Defendant" or "Ocwen") and states as follows:

## I. INTRODUCTION

1.     Plaintiff asserts claims against Defendant for the willful, knowing, and/or negligent violation of: 1) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.,* (known as the Fair Credit Reporting Act, hereinafter referred to as the "FCRA") which relates to the dissemination of consumer credit and other financial information; 2) the Texas Debt Collection Act, Tex. Fin. Code § 392.001 *et. seq.*; 3) invasion of privacy; 4) unreasonable collection; and 5) the chapter 7 discharge injunction of the United States Bankruptcy Court of the Eastern District of Texas, Sherman Division, and seeks to recover actual, statutory, and punitive damages, injunctive relief, legal fees and expenses against Defendant.

## II. PARTIES

2.    Plaintiff is a natural person residing in Collin County, Texas and she is a "consumer" as defined by the FCRA.

3.    Defendant is a foreign limited liability company and may be served by delivering a summons to its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin 78701-3218.

4.    Defendant is a "person" and a "user" of consumer credit and other financial information, as said terms are defined and contemplated respectively, under the FCRA.

5.    Defendant is a "debt collector" as defined by Tex. Fin. Code § 392.001(6).

6.    Defendant is a furnisher of consumer credit information to Experian Information Solutions, LLC ("Experian"), one of the three (3) national consumer reporting agencies.

## III. JURISDICTION AND VENUE

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1337(a) and 15 U.S.C. § 1681p and 28 U.S.C. §§2201-2202.

8.    Venue in this district is proper because Defendant transacts business in this district, Plaintiff filed her bankruptcy case in this district, and the conduct complained of occurred in this district.

## IV. FACTUAL ALLEGATIONS

9.    On August 3, 2007, Plaintiff filed a chapter 13 bankruptcy, bankruptcy case number 07-41712 ("Bankruptcy Case"), in the Eastern District of Texas Bankruptcy Court, Sherman Division ("Bankruptcy Court"), and the case was converted to one under chapter 7 on February 5, 2008.

10. On May 5, 2008, Plaintiff received a discharge in her Bankruptcy Case, and the servicer of the subject debt at the time the Bankruptcy Case was filed, Avelo Mortgage, LLC ("Avelo") f/k/a Litton Loan Servicing, L.P. ("Litton") n/k/a Ocwen, was listed in the case as a secured creditor and received a copy of the Discharge Order.

11. A true and correct copy of the Discharge Order granted in the Bankruptcy Case is attached hereto as Exhibit "A."

12. Prior to Plaintiff filing her Bankruptcy Case, Litton asserted a pre-petition claim against Plaintiff, as servicer on the subject debt, in an attempt to collect a consumer debt allegedly owed by Plaintiff.

13. The claim was listed in Schedule "D" as a secured claim and it was secured by a lien on Plaintiff's prior home located at 8300 Elk Mountain Trail, McKinney, Texas 75070 (the "Property") and the subject mortgage debt was identified as Account No. 100194547 ("1st Lien Account") and Account No. 100194521 a/k/a Ocwen Account and Loan No. 7096127647 ("2nd Lien Account").

14. Avelo made an appearance in the Bankruptcy Case and filed a motion for relief from the automatic stay in the case. As Plaintiff had surrendered the Property, she did not oppose the lifting of the stay by Avelo. Consequently, the automatic stay was lifted on February 8, 2008 to allow Avelo to exercise its rights to foreclose on the Property.

15. On April 1, 2008 the Property was foreclosed by the then current lien holder, Avelo, and purchased by Avelo at the foreclosure sale.

16. Shortly after the foreclosure, Litton began contacting Plaintiff about the debt, even though the Property had been foreclosed and the subject debt discharged.

17.    As a result of these collection attempts, Plaintiff filed an adversary complaint against Litton asserting a violation of the bankruptcy discharge injunction.  On October 11, 2010, the parties entered into a settlement agreement and the adversary proceeding was dismissed.

18.    On or about November 1, 2011 Avelo, or its successor lien holder, assigned the servicing of the Loan to Defendant Ocwen.

19.    Despite the fact that the property had been foreclosed and the debt discharged, Ocwen engaged in debt collection activity against Plaintiff by (1) sending out statements on the Account, (2) sending letters to the Plaintiff regarding the Property as if the Plaintiff still owned it, and (3) impermissibly accessing Plaintiff's consumer credit report and credit information maintained by Experian on numerous occasions. (4) Reporting to Experian that the property had been foreclosed when it had no legal right to report on the account as it was discharged in bankruptcy prior to Ocwen purchasing the servicing rights to the discharged and foreclosed loan.

**Letters and Statements**

20.    On or about October 14, 2011, Defendant sent Plaintiff a letter notifying her that Defendant was taking over servicing of the 2nd Lien Account from Litton, even though it had been notified that Plaintiff was granted a discharge in bankruptcy, the account was no longer collectible, and Plaintiff had no further interest or right to information about the Property.

21.    A true and correct copy of the October 14, 2011 letter is attached hereto as Exhibit "B" and incorporated herein by reference.

22. On or about November 4, 2012, Defendant sent Plaintiff a letter advising her that Defendant was a debt collector and it was sending the letter in an attempt to collect a debt, that she owed a balance on the Account of $65,565.31, and that she should call to make arrangements with her Relationship Manager to pay the debt.

23. A true and correct copy of this November 4, 2011 letter is attached hereto as Exhibit "C."

24. On or about November 8, 2011, Defendant sent Plaintiff a monthly statement for the 2nd Lien Account complete with payment coupon and return envelope, representing that the account was open, $23,073.13 was due and payable, and threatening to report such debt to the credit bureaus.

25. A true and correct copy of this November 8, 2011 statement has been attached hereto as Exhibit "D"

26. On or about November 17, 2011, Defendant sent Plaintiff a Privacy Statement with a detachable form for Plaintiff to fill out and return to Defendant with regard to Defendant sharing Plaintiff's information with other entities about Plaintiff.

27. A True and correct copy of the November 17, 2011 letter is attached hereto as "Exhibit "E."

28. On or about December 5, 2012, Defendant sent Plaintiff a letter advising her what Ocwen does with her personal information and for her to contact Ocwen with any limits she may have with the disclosure of her personal information.

29. A true and correct copy of the December 5, 2011 letter is attached hereto as "Exhibit "F."

30. On or about December 19, 2011, Defendant Ocwen sent Plaintiff a monthly statement for the 2nd Lien Account, complete with payment coupon and return envelope, representing

that the account was open, $23,503.30 was due and payable, and threatening to report such debt to the credit bureaus.

31.     A true and correct copy of this December 19, 2011 statement has been attached hereto as Exhibit "G."

32.     On or about January 17, 2012, Defendant sent Plaintiff a monthly statement for the 2nd Lien Account, complete with payment coupon and return envelope, representing that the account was open, $23,913.92 was due and payable, and threatening to report such debt to the credit bureaus.

33.     A true and correct copy of this January 17, 2012 statement has been attached hereto as Exhibit "H"

34.     On or about February 17, 2012, Defendant Ocwen sent Plaintiff a monthly statement for the Account complete with payment coupon and return envelope, representing that the account was open, $24,324.54 was due and payable, and threatening to report such debt to the credit bureaus.

35.     A true and correct copy of this February 17, 2012 statement has been attached hereto as Exhibit "I."

36.     On or about March 19, 2012, Defendant sent Plaintiff a monthly statement for the 2nd Lien Account, complete with payment coupon and return envelope, representing that the account was open, $24,735.16 was due and payable, and threatening to report such debt to the credit bureaus.

37.     A true and correct copy of this March 19, 2012 statement has been attached hereto as Exhibit "J."

38.   On or about April 17, 2012, Defendant Ocwen sent Plaintiff a monthly statement for the Account complete with payment coupon and return envelope, representing that the account was open, $25,145.78 was due and payable, and threatening to report such debt to the credit bureaus.

39.   A true and correct copy of this April 17, 2012 statement has been attached hereto as Exhibit "K"

40.   On or about May 17, 2012, Defendant Ocwen sent Plaintiff a monthly statement for the 2nd Lien Account, complete with payment coupon and return envelope, representing that the account was open, $25,556.40 was due and payable, and threatening to report such debt to the credit bureaus.

41.   A true and correct copy of this May 17, 2012 statement has been attached hereto as Exhibit "L."

42.   On or about June 18, 2012, Defendant Ocwen sent Plaintiff a monthly statement for the 2d Lien Account, complete with payment coupon and return envelope, representing that the account was open, $25,947.47 was due and payable, and threatening to report such debt to the credit bureaus.

43.   A true and correct copy of this June 18, 2012 statement has been attached hereto as Exhibit "M."

44.   On or about July 17, 2012, Defendant Ocwen sent Plaintiff a monthly statement for the 2nd Lien Account, complete with payment coupon and return envelope, representing that the account was open, $26,377.64 was due and payable, and threatening to report such debt to the credit bureaus.

45.     A true and correct copy of this July 17, 2012 statement has been attached hereto as Exhibit "N."

46.     On or about August 17, 2012, Defendant Ocwen sent Plaintiff a monthly statement for the 2nd Lien Account, complete with payment coupon and return envelope, representing that the account was open, $26,768.71 was due and payable, and threatening to report such debt to the credit bureaus.

47.     A true and correct copy of this August 17, 2012 statement has been attached hereto as Exhibit "O."

48.     On or about September 17, 2012, Defendant Ocwen sent Plaintiff a monthly statement for the 2nd Lien Account, complete with payment coupon and return envelope, representing that the account was open, $27,198.88 was due and payable, and threatening to report such debt to the credit bureaus.

49.     A true and correct copy of this September 17, 2012 statement has been attached hereto as Exhibit "P."

50.     On or about October 23, 2013 Defendant sent Plaintiff a Mortgage Assistance Letter for the 2nd Lien Account, requesting Plaintiff contact Defendant to schedule a time with her relationship manager identified in the letter and to send Defendant any lost mitigation application materials, even though the underlying debt had been discharged.

51.     A true and correct copy of the October 23, 2013 letter is attached hereto as Exhibit "Q."

**Impermissible Credit Pulls**

52.     Further, despite the fact that the Property had been foreclosed and the 1st Lien Account and 2d Lien Account discharged, Defendant repeatedly accessed Plaintiff's consumer

credit report and consumer credit information with Experian by misrepresenting to Experian that it had a permissible purpose for such access, when it did not.

53. On or about January 31, 2012, Defendant Ocwen impermissibly accessed Plaintiff's credit report with Experian.

54. On or about May 11, 2012, Defendant Ocwen impermissibly accessed Plaintiff's credit report with Experian.

55. On or about August 9, 2012, Defendant Ocwen impermissibly accessed Plaintiff's credit report with Experian.

56. On or about October 29, 2012, Defendant Ocwen impermissibly accessed Plaintiff's credit report with Experian.

57. On or about February 1, 2013, Defendant Ocwen impermissibly accessed Plaintiff's credit report with Experian.

58. On or about April 29, 2013, Defendant Ocwen impermissibly accessed Plaintiff's credit report with Experian.

59. On or about July 23, 2013, Defendant Ocwen impermissibly accessed Plaintiff's credit report with Experian.

60. On or about October 25, 2013, Defendant Ocwen impermissibly accessed Plaintiff's credit report with Experian.

61. A true and correct copy of the relevant portions of Plaintiff's Experian credit report showing the impermissible account reviews and Defendant's requested access of Plaintiff's consumer credit reports and credit information is attached hereto as Exhibit "R."

62.     The purpose for accessing Plaintiff's credit reports was allegedly for "collection" or "review purposes;" yet, the debt on the 1st Lien Account and 2nd Lien Account had been discharged, and there was no legitimate reason for Defendant to review Plaintiff's credit reports or credit information at all times relevant to this case.  If Plaintiff's consumer credit reports were reviewed for collection purposes, Defendant Ocwen was trying to collect a debt in violation of the discharge injunction.  If it denies that this was the purpose, then Defendant Ocwen was trying to gain access to Plaintiff's personal financial information which is protected by law.

63.     This illegal access to Plaintiff's credit reports and credit information by Defendant has occurred as recently as October 23, 2013, long after the discharge of the debt(s) at issue.

64.     Defendant knew and continues to know that a discharge order means the debt is no longer collectible, but Defendant has made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to violate Plaintiff's right to privacy by impermissibly accessing Plaintiff's credit reports after the discharge was granted in her bankruptcy case.

65.     After a reasonable time for discovery, Plaintiff believes she will be able to show that despite receiving dozens, if not hundreds, of disputes complaining that Defendant was illegally accessing credit reports for account holders whose debts with Defendant had been discharged in bankruptcy, Defendant intentionally and knowingly has not corrected its policy of doing so.

66.     After a reasonable time for discovery, Plaintiff believes she will be able to show that all actions taken by employees, agents, servants, or representatives of any type for

Defendant were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

67.    After a reasonable time for discovery, Plaintiff believes she will be able to show that all actions taken by Defendant at issue were performed with malice, were done wantonly, recklessly, intentionally or willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.

68.    After a reasonable time for discovery, Plaintiff believes she will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and consumer reports and Defendant is subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies.

## V.  GROUNDS FOR RELIEF - COUNT I

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et. seq*)

69.    Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

70.    The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

(f)  Certain use or obtaining of information prohibited. – A person shall not use or obtain a consumer report for any purpose unless –

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2)  the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

*See* 15 U.S.C. § 1681b (f).

71.   Section 1681b(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

(a) In General. – * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

***

(3)  To a person which it has reason to believe –

(A)   intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

***

(F)  otherwise has a legitimate business need for the information * * *

(ii)  to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

72.   On at least eight (8) occasions after the Discharge Order was signed and entered in Plaintiff's Bankruptcy Case, Defendant requested and obtained Plaintiff's consumer report from Experian.

73.   On such occasion, Defendant represented to Experian that such requests were made for "account review" or "collection" purposes.

74.     When requesting and obtaining Plaintiff's credit information from Experian, as described herein, Defendant had actual knowledge that it did not have a permissible purpose to obtain such information.

75.     Defendant has actual knowledge that as of Plaintiff's bankruptcy filing in August 3, 2007 and its subsequent discharge, the underlying Account was closed and Defendant was legally prohibited from pursuing any collection against it or communicating with Plaintiff about the Account and the underlying discharged debt to justify an account review of her credit information.   As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit reports with the credit bureaus.

76.     At the time Defendant impermissibly accessed Plaintiff's credit reports, Defendant had actual knowledge that Plaintiff had not requested new credit from it or had initiated a credit transaction with Defendant at any time since her bankruptcy filing or discharge. As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit information as it did.

77.     At the very latest, Defendant had actual knowledge of Plaintiff's bankruptcy discharge as of January 31, 2012, when it accessed a copy of Plaintiff's Experian Credit Report, where such bankruptcy was cleared noted.   From that date forward it had actual knowledge that Plaintiff had not authorized access and reviews of her consumer report by Defendant. As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit information when it engaged in such action after that date.

78.     For Defendant to repeatedly request and obtain Plaintiff's private personal and financial information, in the face of actual knowledge that it had no permissible purpose to do so, constitutes its knowing and willful violations of the FCRA.

79.     After a reasonable time to conduct discovery, Plaintiff believes she can prove that Defendant requested and obtained Plaintiff's private personal and financial information from the credit bureaus for the illegal purpose of attempting to collect on the underlying discharged debt.

80.     After a reasonable time to conduct discovery, Plaintiff believes she can prove that Defendant used false pretenses, namely the representation that it intended to use Plaintiff's consumer report for account review or collection purposes, to obtain Plaintiff's private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

81.     After a reasonable time to conduct discovery, Plaintiff believes she can prove, additionally and/or in the alternative, Defendant is unwilling or unable to prevent its system from requesting and obtaining Plaintiff's consumer report without a permissible purpose, thereby subjecting Plaintiff to having her private, personal and financial information disclosed without her consent, authorization or other legal justification.

82.     As a direct and proximate result of Defendant's conduct as outlined above, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress from the ongoing invasion of her privacy, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

83.     Defendant's conduct reveals a conscious and reckless disregard of Plaintiff's rights.  The injuries suffered by Plaintiff were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

84.     Since Defendant's illegal access to Plaintiff's credit reports is ongoing in nature, Defendant is liable for any and all future harm suffered by Plaintiff as a result of Defendant's conduct.

## VI. GROUNDS FOR RELIEF - COUNT II

## TEXAS FINANCE CODE - UNFAIR DEBT COLLECTION

85.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraph as above as if fully rewritten here.

86.     Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

a)   Tex. Fin. Code § 392.301(a)(8), which prohibits Defendant from taking an action prohibited by law, since the FCRA prohibits accessing a credit report without a valid purpose, and Defendant's attempts to collect the discharged debt constituted a violation of the bankruptcy discharge injunction currently in place;

b)     Tex. Fin. Code § 392.304(a)(8), which prohibits Defendant from misrepresenting the character, extent, or amount of Plaintiff's debt, or misrepresenting the status of Plaintiff's debt in a judicial or governmental proceeding, since Defendant alleged the justification for accessing Plaintiff's credit reports was an "account review" or "other business transaction," that was a misrepresentation of the status of debt at issue, and by continuing to send statements to Plaintiff showing a balance due on the 2d Lien Account and enclosing a payment remittance coupon, Defendant was misrepresenting that the debt was collectable when it was not by virtue of the automatic stay or the discharge injunction; and

c)   Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, since the debt at issue was discharged in Plaintiff's Bankruptcy Case and there were no other transactions between the parties after Plaintiff filed her Bankruptcy Case, the only conclusion that can be drawn is Defendant was trying to gather information for an attempt to collect the debt at issue in violation of the discharge injunction.  Also, the continued sending of statements, letters, and demands for payment, when the property had already been foreclosed and the debt discharged, were deceptive means to collect a debt since the debt had already been discharged and was uncollectible.     Furthermore, reporting to Experian that the property had been foreclosed when it had no legal right to report to credit bureaus on this discharges debt was the culmination of its earlier threats to report to the credit bureaus. This was done maliciously with the intent to injury the Plaintiff.   Defendant was fully aware of the damage this would do to her credit rating and that this false and misleading information would be seen by any current and future potential lender that legally accessed her credit reports.

87.   Under Tex. Fin. Code Ann. § 392.403, the said violations render Defendant liable to Plaintiff for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorney's fees.

88.   Plaintiff's injuries resulted from Defendant's gross negligence, malice, and/or actual fraud, which entitle Plaintiff to punitive damages.

89.   Due to Defendant's conduct, Plaintiff was forced to hire counsel and her damages include reasonable attorney's fees incurred in prosecuting this claim.

**VII. GROUNDS FOR RELIEF - COUNT III.**

16

## COMMON LAW TORT OF UNREASONABLE COLLECTION

90.    Plaintiff repeats, re-alleges, and incorporates herein by reference the above paragraphs. The above described debt collection efforts of Defendant constitute a pattern of harassment that is willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.

91.    Specifically, the continued sending of statements, demands for payment and illegally accessing Plaintiff's consumer reports and credit information, singularly and collectively, constitute an unreasonable collection.

92.    The acts committed by Defendant made basis of Plaintiff's claims were performed maliciously, wantonly, recklessly, intentionally, knowingly or willfully and with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.  Accordingly, Plaintiff is entitled to punitive damages.

93.    The conduct of Defendant at issue was the proximate and/or producing cause of Plaintiff's actual damages including past and future economic loss, past and future extreme mental anguish, loss of time, damage to her credit, attorney's fees and costs of court.

## VIII. GROUNDS FOR RELIEF - COUNT IV

## INVASION OF PRIVACY

94.    Plaintiff restates and reiterates herein all previous paragraphs.

95.    Defendant's conduct, as described herein, when it acquired a copy of Plaintiff's consumer report and credit information constituted an invasion of Plaintiff's private affairs.  The invasion was one that would be highly offensive to a reasonable person because

confidential and sensitive personal and financial information is included a consumer report.  Such wrongful acts caused injury to Plaintiff which resulted in extreme emotional anguish and mental distress and loss of time.

96.     Plaintiff's injuries resulted from Defendant's malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## IX. GROUNDS FOR RELIEF - COUNT V

## VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

97.     Plaintiff repeats, re-alleges, and incorporates herein all previous paragraphs above as if set forth herein in their entirety.

98.     At all times material to this proceeding, Defendant had actual knowledge of Plaintiff's' Bankruptcy Case and the discharge of the debt at issue in said case.

99.     Defendant failed to cease its debt collection activity on the account and debt at issue when it became aware that Plaintiff filed for bankruptcy protection and the debt had been discharged in the Bankruptcy Case, as evidenced by Defendant sending Plaintiff statements and letters regarding the discharged 2d Lien Account, and repeatedly accessing Plaintiff's credit reports from Experian without a lawful purpose, and misreporting the status of the account and debt at issue to Experian.

100.    Defendant's aforesaid actions were willful acts and constitute efforts to collect discharged debt from Plaintiff in violation the discharge injunction of 11 U.S.C. §524(a).

101.    The actions of Defendant in repeatedly accessing Plaintiff's consumer reports from Experian and misrepresenting to Experian that it had a right to access such reports, along with sending Plaintiff statements and correspondences seeking collection on the 2d Lien

Account, constitute a gross violation of the discharge injunction as set forth in 11 U.S.C. §524(a)(1)-(3).

102.   The facts and background stated above demonstrate that Defendant willfully violated the orders and injunctions of the Bankruptcy Court as they concern the bankruptcy filed by Plaintiff.  With this prima facie showing, the duty is on Defendant to show, as the only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability.  Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiff must prevail on their claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy filed by Plaintiff.  Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant.  Any allegation of a good faith exception should not be allowed.

103.   Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…'"

104.   No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with regard to the discharge injunction, as stated above.

105. The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint.  None of the aforementioned has been approved by the Bankruptcy Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case as pertaining to the rights and remedies of Defendant.

106. Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court.  Any attempt to burden Plaintiff with policing the misconduct of Defendant would be a complete derogation of the law.  It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance.  Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendant.  No allegation of a mitigation as a defense should be allowed.

107.  Plaintiff has been injured and damaged by Defendant's actions and is entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §524, and pursuant to the Court's powers under 11 U.S.C. § 105.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Maria Elizabeth Soto, prays that the Court will:

A.      Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, pre and post judgment interest, and reasonable and necessary attorney fees as provided by Tex. Fin. Code Ann. § 392.403, and 11 U.S.C. §105;

B.      Award Plaintiff her damages under the FCRA, including statutory damages, actual damages, and punitive damages, and for the multiple invasions of privacy, unreasonable collection and for violation of the discharge injunction.

C.      Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

D.      Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

E.      Grant such other and further relief, in law or equity, to which Plaintiff might show herself justly entitled.

Respectfully submitted,


_____/s/ James J. Manchee_____
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
Marilyn S. Altamira
State Bar Number 00796119
maltamira@mancheelawfirm.com
Manchee & Manchee, PC
12221 Merit Drive, Suite 950
Dallas, Texas 75251
(972) 960-2240 (telephone)
(972) 233-0713 (fax)
ATTORNEYS FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial to a jury on all issues so triable.

2/24/14_____          _/s/ *James J. Manchee*_____
Date                          James J. Manchee